IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

BRUCE G. ADAMSON,                    )
                                     )
                    Plaintiff,       )        Civil Case No. 08-6200-KI
                                     )
        vs.                          )        OPINION AND ORDER
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
                    Defendant.       )
_____    )

        Richard F. McGinty
        McGinty & Belcher
        P. O. Box 12806
        Salem, Oregon  97301

                Attorney for Plaintiff

        Karin J. Immergut
        United States Attorney
        District of Oregon
        Adrian L. Brown
        Assistant United States Attorney
        1000 SW Third Avenue, Suite 600
        Portland, Oregon  97204-2902

Page 1 - OPINION AND ORDER

Leisa A. Wolf
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Bruce Adamson brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner and remand for further proceedings.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

Page 2 - OPINION AND ORDER

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the burden of proof on the first four steps.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work which he or she performed in the past, a finding of

"not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and

416.920(e).

 If the claimant is unable to perform work performed in the past, the Commissioner

proceeds to the fifth and final step to determine if the claimant can perform other work in the

national economy in light of his or her age, education, and work experience. The burden shifts to

the Commissioner to show what gainful work activities are within the claimant's capabilities.

Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to

perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

 The court must affirm a denial of benefits if the denial is supported by substantial

evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1

(9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than

a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences

reasonably drawn from the record, and if evidence exists to support more than one rational

interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d

1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

 On April 4, 2001, Adamson protectively filed applications for DIB and SSI which were

denied and not appealed. He filed new applications on April 8, 2003 and, after a hearing, the

ALJ denied the claims on August 16, 2005. Adamson filed for judicial review of this first ALJ's

decision. On October 12, 2006 and the court reversed and remanded the matter for further

consideration. A second ALJ held hearings on July 12 and November 6, 2007 and issued an

unfavorable decision on April 25, 2008 which found that Adamson was not disabled.  The

second ALJ's decision is the one being reviewed in this action.

In the April 2008 decision, the ALJ found that Adamson had severe impairments of

degenerative disc disease of the lumbar spine; an affective disorder, post traumatic stress disorder

("PTSD") versus an anxiety disorder; a personality disorder; and alcohol and marijuana abuse.

The ALJ also found that these impairments, either singly or in combination, were not severe

enough to meet or medically equal the requirements of any of the impairments listed in

Appendix 1, Subpart P of the Social Security Regulations.  The ALJ found that Adamson had the

residual functional capacity to perform light work except he is limited to work involving simple,

repetitive tasks with no direct contact with the public.  Based on vocational expert testimony, the

ALJ found that Adamson could work as a small product assembly worker or cannery worker and,

thus, was not disabled under the Act.

## FACTS

Adamson alleges he became disabled on January 5, 2003 due to depression, tension,

anxiety, and back pain.  He was 54 years old at the time of the ALJ's second decision and had

taken a few college classes after getting a GED.  Adamson has worked as a flagger, janitor,

delivery driver, merchandiser, and tobacco auditor.

Adamson complains of constant burning, aching, stinging pain in his head, back, and

toes.  He lies down four or five times during the day, for a total of about six hours, to relieve pain

from not changing positions.

Mentally, Adamson complains of a lack of motivation and feeling overwhelmed due to

depression and anxiety.  He also has difficulty with memory and concentration.

Page 5 - OPINION AND ORDER

**DISCUSSION**

I.    <u>Alcohol and Drug Abuse</u>

Adamson has a long history of alcohol abuse, including three DUI convictions, as well as some unsuccessful attempts to stop drinking.  He also uses marijuana to relieve pain, at the rate of two or three times a month in 2005.

Adamson contends that the ALJ erred by considering the effects of Adamson's alcohol and drug use prior to making a finding that he was disabled.  According to Adamson, the medical witness's opinion is also tainted by her consideration of the impact of his alcohol and drug use on his functional limitations prior to a finding of disability.  Adamson argues that the ALJ should have requested that the medical expert assess limitations once when drugs or alcohol were considered and a second time when they were not considered.

The Commissioner contends that the drug and alcohol abuse materiality analysis was not triggered because the ALJ did not find that Adamson was disabled.  According to the Commissioner, the ALJ properly considered Adamson's inconsistent statements about alcohol usage in the context of the adverse credibility finding.

> Under 42 U.S.C. § 423(d)(2)(C), a claimant cannot receive disability benefits "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." . . . Under the implementing regulations, the ALJ must conduct a drug abuse and alcoholism analysis ("DAA Analysis") by determining which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b).  If the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability.  If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied.

<u>Parra</u>, 481 F.3d at 746-47.  The drug and alcohol analysis is only performed "[i]f we find that you are disabled."  20 C.F.R. § 404.1535(a); <u>Bustamante v. Massanari</u>, 262 F.3d 949, 955 (9th Cir.

Page 6 - OPINION AND ORDER

2001) (ALJ must identify disability under the five-step procedure before conducting a drug and alcohol abuse analysis to determine if substance abuse was material to disability). The claimant has the burden of proving that drug or alcohol addiction is not a contributing factor material to his disability. Parra, 481 F.3d at 748.

Adamson points to several statements in the ALJ's opinion which discuss the effect of Adamson's alcohol use on his mental impairments. For example: (1) Dr. Clayton testified that Adamson's problems with attention, short-term memory and depression were affected by his substance abuse, Tr. 458; (2) Adamson's difficulties with anger control, irritability and paranoia increase when he is abusing alcohol, Tr. 461; (3) Dr. Cochran opined that Adamson's mental impairments, including substance abuse, would likely result in problems with sustaining activities, id.; and (4) Dr. Sjodin opined that Adamson's depressive symptoms would likely improve if he stopped abusing alcohol, Tr. 464.

I do not agree with Adamson's contention that the ALJ assessed the materiality of Adamson's alcohol use prior to completing the five-step inquiry. The ALJ made the noted statements when summarizing the medical record. He then went on to complete the five-step disability analysis based on Adamson's impairments and functionality as they existed at the time, namely, when Adamson continued to drink. Adamson claims that the ALJ should have asked the medical expert to assess his limitation once when drugs and alcohol were used and a second time assuming he abstained from use. This, however, is the drug and alcohol analysis discussed in 20 C.F.R. § 404.1535 and is not performed unless the ALJ makes a finding of disability after the five-step analysis, considering the claimant with his normal use of drugs and alcohol. Here, the ALJ did not conclude that Adamson was disabled after the five-step analysis. Thus, I agree with

the Commissioner that the drug and alcohol analysis was never triggered and, more importantly, should not have been performed as explained in Bustamante. The ALJ did not commit an error. Adamson's drug and alcohol use did, however, affect the ALJ's treatment of Dr. Cochran's opinion, as discussed next.

II.    Opinion of Dr. Cochran

Adamson claims that the ALJ failed to properly evaluate the medical opinion from an examining psychologist, Dr. Cochran. In particular, Adamson relies on Dr. Cochran's opinion that Adamson would have a moderate limitation in some areas, a moderately severe limitation in other areas, and symptoms which would make it difficult for Adamson to maintain employment.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Id. (treating physician); Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Orn, 495 F.3d at 632; Widmark, 454 F.3d at 1066. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Widmark, 454 F.3d at 1066 n.2. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence

when they are supported by and are consistent with other evidence in the record.  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

Dr. Cochran administered several psychological tests to Adamson and diagnosed him with major depressive disorder, recurrent; anxiety disorder, not otherwise specified; dysthymic disorder; alcohol dependence; cannabis abuse; and personality disorder not otherwise specified with avoidant, antisocial, paranoid, and passive aggressive traits.  The psychologist also concluded that Adamson had moderately severe limitations in numerous areas: (1) understanding and remembering detailed instructions; (2) carrying out detailed instructions; (3) working in coordination with or proximity to others without being distracted by them; (4) completing a normal workday and/or workweek without interruptions from psychologically based symptoms; interacting appropriately with the general public; (5) accepting instructions and responding appropriately to criticism from supervisors; and (6) getting along with coworkers or peers without distracting them or exhibiting behavioral extremes.  Dr. Cochran also assessed moderate limitations in several of the functions grouped under adaptation.  Dr. Cochran stated that Adamson's "constellation of symptoms make it difficult for him to find work and to hold a job."  Tr. 627.

The ALJ gave greater weight to the opinion of the medical expert, psychologist Dr. Clayton, than to the opinion of Dr. Cochran.  After the hearing, the ALJ allowed Dr. Clayton to provide written areas of disagreement with Dr. Cochran's report.  Dr. Cochran then provided a written reply.  The two psychologists strongly disagree about the correct interpretation of the MMPI-2 test results concerning whether Adamson was intentionally exaggerating his symptoms.

In response to Dr. Cochran's diagnosis of major depressive disorder and dysthymic disorder, Dr. Clayton stated that she would give a more conservative diagnosis of mood disorder plus rule out substance-induced mood disorder because Adamson reported drinking alcohol the night before Dr. Cochran's examination and had three DUI convictions and substance abuse treatment in 2006.  Dr. Clayton also stated that she would assess Adamson's GAF five points higher than Dr. Cochran did because alcohol use would exacerbate Adamson's social functioning limitations.

The ALJ reviewed Dr. Clayton's response and found her findings to be clear and concise and her opinion consistent with the preponderance of the evidence.  He noted the disagreement on the MMPI-2 interpretation and concluded that Dr. Cochran was acting as an advocate for Adamson.  The ALJ was also concerned that Dr. Cochran did not give a basis for concluding whether drug and alcohol issues aggravate Adamson's mental impairments.

The ALJ is charged with resolving conflicting medical opinions.  Dr. Clayton, however, appears to have discounted Adamson's limitations based on the fact that he continues to drink and smoke marijuana and multiple medical sources believe that his mental limitations would improve if he abstained.  This is the second part of the drug and alcohol analysis that would be performed under 20 C.F.R. § 404.1535 if the ALJ concluded that Adamson is disabled when drinking.  But opinions on Adamson's functionality if clean and sober cannot be used to discredit Dr. Cochran's opinion of Adamson's functionality when drinking and using drugs.  The ALJ must first determine Adamson's residual functional capacity when drinking and using drugs because that is Adamson's current status.

Accordingly, I conclude that the ALJ did not provide specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Cochran's opinion in favor of Dr. Clayton's opinion.

III.    Residual Functional Capacity to Perform Light Work

Adamson argues that the ALJ's determination that he could perform light work is not supported by substantial evidence.  He notes that the ALJ gave significant weight to the opinions of Dr. Stringham and the DDS medical consultants but argues that these opinions were given prior to Adamson's alleged onset date of January 5, 2003 and are too old to support the ALJ's determination.

The record contains a lot of medical records and opinions prior to the remand from this court.  Dr. Stringham's opinion was given on June 6, 1998, based on his last examination of Adamson on May 20, 1997, over five years prior to the latest alleged onset date.  This opinion is much too dated to be persuasive concerning Adamson's condition as of his alleged onset date in 2003.

The DDS consultants' opinions were given in June 2001, about 18 months before the latest alleged onset date.  Although dated, reliance on these opinions is not an error if they are corroborated by more recent opinions.  I note that another DDS consultant gave an updated opinion on August 29, 2003 with the same lifting, standing, walking, and sitting limitations as in the June 2001 opinion.

Adamson argues that the ALJ gave significant weight to portions of the Physical Capacity Evaluation performed on July 9, 2003 by physical therapist Hayse, but the ALJ declined to use evidence from the same opinion that precludes Adamson from performing light work.

Page 11 - OPINION AND ORDER

The ALJ adopted Hayse's opinion that Adamson could lift and carry 20 pounds.  Hayse also stated that Adamson could sit for 60 minutes at a time for four hours a day, stand stationary for 20 minutes at a time for one to two hours a day, and stand/move about for 45 minutes at a time for three to four hours per day.  "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10.  The ALJ gave no explanation for failing to adopt Hayse's opinion on Adamson's ability to stand and move about for a total of three hours a day, at most, an amount considerably less than what is required for the full range of light work.

Although a physical therapist is not an acceptable medical source, "[o]pinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  SSR 06-3p.

Thus, the ALJ failed to address this portion of Hayse's opinion and relied on Dr. Stringham's outdated opinion.  This is balanced with the ALJ's reliance on the slightly dated 2001 opinion of DDS consultants which is corroborated by the 2003 opinion of DDS consultants. The consultants' opinions are insufficient, however, to support the ALJ's conclusion on their own.  I conclude that the ALJ's determination that Adamson can perform light work without physical limitation is not supported by substantial evidence.

IV.    Remedy

The court has the discretion to remand the case for additional evidence and findings or to award benefits.  McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  The court should credit evidence and immediately award benefits if the ALJ failed to provide legally

sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir.), cert. denied, 531 U.S. 1038 (2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Id. On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

It is not clear from the record that Adamson is disabled. Once the ALJ reexamines the opinions of Dr. Cochran and the evidence on which to base the residual functional capacity of light work, the ALJ might determine that Adamson is disabled, thus triggering the drug and alcohol analysis. Although I do not like to remand Social Security actions for a second time, the Commissioner's work is not yet complete.

## CONCLUSION

The decision of the Commissioner is reversed.  This action is remanded to the

Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the

record as explained above.  Judgment will be entered.

IT IS SO ORDERED.

Dated this _____13th_____ day of July, 2009.


_____/s/ Garr M. King_____
Garr M. King
United States District Judge